1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10
11

ANTHONY LAWS,

No.  1:13-cv-01546-SKO  HC

12

Petitioner,

**ORDER DENYING FIRST
AMENDED PETITION FOR
WRIT OF HABEAS CORPUS**

13

v.

14

DANIEL PARAMO, Warden,

15

Respondent.

16
17

Petitioner Anthony Laws is a state prisoner proceeding *pro se* with a petition for writ of

18

habeas corpus pursuant to 28 U.S.C. § 2254.[1]  Petitioner's sole ground for habeas relief is

19

ineffective assistance of appellate counsel.  Respondent counters that because the state court's

20

denial of Petitioner's claim was reasonable, granting Petitioner federal habeas relief would be

21

improper.  The Court agrees with Respondent.

22

I.    **Factual and Procedural Background**

23
24

A February 2010 complaint charged Petitioner with (1) armed robbery (California Penal

25

Code § 212.5(c)), with an enhancement for personal use of a deadly of dangerous weapon (a

26

knife) (California Penal Code § 12022(b)(1)); (2) burglary (California Penal Code § 460(b));

27
28

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), both parties consented, in writing, to the jurisdiction of a United States
Magistrate Judge to conduct all further proceedings in this case, including the entry of final judgment.

1   (3) grand theft (California Penal Code § 487(a)); and (4) conspiracy (California Penal Code

2   § 182(a)(1).[2]

3          In May 2010, in Kern County Superior Court, Petitioner pleaded no contest to a single

4   count of second degree robbery (California Penal Code §§ 211 and 212.5(c)).  All other charges

5   were then dismissed.  In July 2010, Petitioner moved to withdraw his plea based on his mental

6   capacity at the time of his plea, and the court continued the sentencing hearing.  In October 2010,

7   the court issued a subpoena for Petitioner's medical records.  In November 2010, Petitioner's

8   attorney withdrew based on a breakdown of communication with Petitioner, and the trial court

9   appointed a new attorney.

10

11         On December 3, 2010, Petitioner again moved to withdraw his plea, alleging that his free

12  will was vitiated by medication and that the advice provided by his prior attorney was inadequate.

13  The trial court denied the motion on December 7, 2010.  On December 14, 2010, the trial court

14  sentenced Petitioner to the midterm sentence of three years' imprisonment.

15

16         Petitioner moved for resentencing.  In connection with sentencing in a second case in May

17  2011, Petitioner's sentence was modified to an aggregate term of 13 years' imprisonment,

18  comprised of 12 years for the second case (charging three additional counts of robbery in

19  violation of California Penal Code § 212.5(c)) and a consecutive one year for the offense to which

20  he pleaded in 2010.  The court also imposed a $40 court security fee pursuant to California Penal

21  Code § 1465.8.

22

23         On May 27, 2011, Petitioner filed a petition for writ of habeas corpus in Kern County

24  Superior Court alleging as grounds for relief ineffective assistance of trial counsel and entering a

25  no-contest plea as a misapprehension of law.  The court denied the petition on June 21, 2011.

26  ///

27

28  ───────────────────────
    [2] The remaining count applied solely to Petitioner's co-defendant, Robin Malcolm.

On August 24, 2011, Petitioner again filed a petition for writ of habeas corpus in Kern County Superior Court alleging as grounds for relief ineffective assistance of counsel and a misapprehension of law leading to an uninformed plea.

On February 2, 2012, Petitioner filed a habeas petition in the California Court of Appeal claiming that his trial counsel had failed to file a timely notice of appeal. On May 29, 2012, the Court of Appeal remanded, directing the Kern County Superior Court to treat the notice of appeal as timely if filed on or before June 18, 2012.

In the Court of Appeal on June 12, 2012, Petitioner filed a petition for writ of habeas corpus alleging entry of the no contest plea under misapprehension of law and ineffective assistance of trial counsel. The Court of Appeal summarily denied the petition on June 28, 2012.

On July 11, 2012, Petitioner filed a petition for writ of mandate in the Court of Appeal, requesting leave to file a belated notice of appeal and belated request for certificate of probable cause. The Court of Appeal denied the petition on July 19, 2012, stating, "Petitioner's remedy is to file a new petition for writ of habeas corpus accompanied by an explanation of why petitioner did not file the belated notice of appeal and request for certificate of probable cause on or before June 18, 2012." On July 31, 2012, the superior court denied a petition for writ of mandate filed July 11, 2012, as untimely.

In the Court of Appeal on September 25, 2012, Petitioner again filed a petition for writ of mandate requesting leave to file a belated notice of appeal and a belated request for certificate of probable cause. On October 3, 2012, the Court of Appeal denied the petition as moot.

On March 1, 2013, Petitioner filed a petition for writ of habeas corpus in the Court of Appeal, alleging ineffective assistance of appellate counsel. The Court of Appeal summarily denied the petition on March 12, 2013.

In a petition for writ of habeas corpus filed in the Court of Appeal on April 16, 2013,

Petitioner alleged ineffective assistance of trial counsel for failure to investigate Petitioner's mental state and allowing Petitioner to enter a no-contest plea that was not knowing, intelligent, and voluntary.  The Court of Appeal summarily denied the petition on May 1, 2013.

On May 10, 2013, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court, alleging ineffective assistance of trial and appellate counsel.  The California Supreme Court summarily denied the petition on September 11, 2013.

On February 12, 2013, Petitioner appealed the imposition of the court security fee, claiming that it violated the constitutional prohibition against ex post facto laws.  The California Court of Appeal affirmed.  *People v. Laws*, 2013 WL 4079162 (Cal. Ct. App. Aug. 2, 2013) (No. F065844).

On September 11, 2013, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court alleging new facts concerning his claim of ineffective assistance of counsel.  The California Supreme Court denied the petition on October 30, 2013.

On September 25, 2013, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The petition alleged ineffective assistance of appellate counsel.  Petitioner subsequently moved to dismiss all unexhausted claims pending before the California Supreme Court.  On January 3, 2014, the Court granted Petitioner's requests to withdraw unexhausted claims and to amend the petition to provide supplemental facts and documentation.

## II.      **Federal Habeas Standard of Review**

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000).  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter.  *Lindh v. Murphy*, 521 U.S. 320,

4

322-23 (1997).  Under the statutory terms, the petition in this case is governed by AEDPA's provisions because Petitioner filed it after April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court.  *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring).  Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings.  *Id.*  Under AEDPA, a petitioner can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)."  *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71.  To do so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision.  *Id.*  The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72.  The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it.  *Early v. Packer*, 537 U.S. 3, 8 (2002).  The federal court must apply the presumption that state courts know and follow the law.  *Woodford v. Visciotti*,

537 U.S. 19, 24 (2002). The petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

## III.      Ineffective Assistance of Appellate Counsel

As his first ground for relief, Petitioner alleges that his appointed appellate counsel, Peter Dodd, provided ineffective assistance of counsel, violating Petitioner's constitutional rights of equal protection and due process, as articulated in the 6th and 14th Amendments to the U.S. Constitution. Specifically, Petitioner contends that appellate counsel failed to raise the following claims Petitioner had suggested to him: (1) trial counsel was ineffective for failing to investigate Petitioner's mental state and to use evidence of Petitioner's mental state to support of Petitioner's motion to withdraw his no contest plea; (2) the trial court abused its discretion in denying Petitioner's motion to withdraw his plea; (3) trial counsel's failure to provide adequate advice rendered Petitioner's no contest plea involuntary, unknowing, and unintelligent; and (4) the terms of the plea agreement were violated because Petitioner entered his plea while under the influence of prescribed psychotropic medication.

As his second ground for relief, Petitioner contends that appellate counsel was ineffective

for failing to allege ineffective assistance of trial counsel based on Petitioner's first trial counsel's failure to advise Petitioner that he was never identified as the robber.  As a result, Petitioner entered into the plea agreement under a misapprehension of law.

### A.        Standard for Reviewing Claims of Ineffective Assistance of Counsel

The purpose of the Sixth Amendment right to counsel is to ensure that the defendant receives a fair trial.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  "[T]he right to counsel is the right to effective assistance of counsel."  *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686.  The *Strickland* standard applies to claims of effective assistance of both trial and appellate counsel.  *See Smith v. Robbins*, 528 U.S. 259, 285 (2000).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's performance "fell below an objective standard of reasonableness" at the time of trial and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 688, 694.  The *Strickland* test requires Petitioner to establish two elements: (1) his attorney's representation was deficient and (2) prejudice.  Both elements are mixed questions of law and fact.  *Id.* at 698.

These elements need not be considered in order.  *Id.* at 697.  "The object of an ineffectiveness claim is not to grade counsel's performance."  *Id.*  If a court can resolve an ineffectiveness claim by finding a lack of prejudice, it need not consider whether counsel's performance was deficient.  *Id.*

### B.        Standard For Setting Aside a Guilty Plea

"[G]uilty pleas are not constitutionally forbidden.  *Brady v. United States*, 397 U.S. 742,

7

751-52 (1970).  Because a guilty plea is a waiver of the constitutional right to a trial before a judge and jury, however, a court must consider "all of the relevant circumstances surrounding it," in determining whether the plea was voluntary, knowing, and intelligent.  *Id.* at 748-49.  A plea is knowing and intelligent if it is entered "with sufficient awareness of the relevant circumstances and the likely consequences."  *Id.* at 748.  Relevant factors include the advice of competent counsel, awareness of the nature of the charge(s), and the absence of any indication of incompetence or lack of control of mental faculties.  *Id.* at 756.  A plea is voluntary if  the defendant enters it with full awareness of the consequences and the actual value of any commitments made in conjunction with the plea agreement, and if the plea was not induced by threats or promises, misrepresentation, or bribery.  *Id.* at 755.

Dispositions of criminal proceedings by guilty plea are "accorded a great measure of finality."  *Blackledge v. Allison*, 431 U.S. 63, 71 (1977).  The Supreme Court wrote:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the plea hearing], as well as any findings made by the judge in accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

> *Id.* at 74.

## C.   Appellate Counsel's Failure to Advance Any Appealable Issues

In several places in the petition, Petitioner accuses appellate counsel of raising no appealable issues.  Since, as Plaintiff himself concedes elsewhere in the petition, appellate counsel appealed the inclusion of the $40 court security fee as an *ex post facto* violation, this claim is factually inaccurate.

///

**D.    Failure to Raise Claims Suggested by Petitioner**

Petitioner contends that appellate counsel failed to include four claims that Petitioner suggested be advanced on appeal.

**1.    Counsel Had No Duty to Incorporate Claims Requested by Petitioner**

A indigent defendant's right to appellate representation does not include a right to present frivolous arguments to the court. *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 436 (1988).  Indeed, an attorney is "under an ethical obligation to refuse to prosecute a frivolous appeal." *Id.*  Further, no U.S. Supreme Court decision suggests "that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

"[I]n holding that a State must provide counsel for an indigent appellant on his first appeal as of right," the Supreme Court "recognized the superior ability of trained counsel in the 'examination into the record, the research of the law, and marshalling of arguments on [the appellant's] behalf.'" *Id.* at 751 (quoting *Douglas v. California*, 372 U.S. 353, 358 (1963)).  To "impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies" the requirement that "an appointed attorney must advocate his client's cause vigorously and may not withdraw from a nonfrivolous appeal." *Jones*, 463 U.S. at 749, 754 (quoting *Anders v. California*, 386 U.S. 738 (1967)).

A hallmark of effective appellate advocacy is counsel's ability to omit weaker issues on appeal. *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989).  "There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." *Jones*, 463 U.S. at 752.  Appellate counsel cannot be

1  found ineffective for failing to raise an argument that would not have been successful.  *Morrison*

2  *v. Estelle*, 981 F.2d 425, 429 (9th Cir. 1992).

3       Nor is appellate counsel required to advance a claim that would detract from the

4  effectiveness of stronger claims.  In *Smith v. Robbins*, 528 U.S. 259, 288 (2000), the Supreme

5  Court endorsed the analysis suggested by the 7th Circuit in *Gray v. Greer*:

> When a claim of ineffective assistance of counsel is based on
> failure to raise viable issues, the district court must examine the
> trial court record to determine whether appellate counsel failed to
> present significant and obvious issues in appeal.  Significant issues
> which could have been raised should then be compared to those
> which were raised.  Generally, only when ignored issues are clearly
> stronger that those presented, will the presumption of effective
> assistance of counsel be overcome.

800 F.2d 644, 646 (7th Cir. 1986).

In determining whether an attorney's appellate assistance was  ineffective, a court must make

"every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances

of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

time."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Strickland*, 466 U.S. at 689).

**2.       Trial Counsel Did Not Fail to Investigate Petitioner's Mental State**

Petitioner contends that trial counsel was ineffective for failing to investigate Petitioner's

mental state and to use evidence of Petitioner's mental state to support of Petitioner's motion to

withdraw his no contest plea.  The state court summarily rejected this claim in habeas

proceedings.  This Court's review of the record indicates that Petitioner's claim is not factually

supported.

**a.       Factual and Procedural Background**

Petitioner entered a no contest plea on May 18, 2010.  On July 15, 2010, Petitioner moved

to withdraw his plea.  As a result, Petitioner moved to continue sentencing in August and

September 2010.

In a September 1, 2010, declaration, Petitioner's first trial attorney, Roger N. Lampkin,

indicated that Petitioner had stated a desire to withdraw his plea as having been entered without

10

1  his informed and voluntary consent.  Because Petitioner's mental capacity at the time of the

2  change of plea was in issue, Mr. Lampkin sought a subpoena  to secure records of Petitioner's

3  treatment while confined at the Lerdo Pretrial facility and appointment of a medical expert to

4  provide a confidential report to counsel as to whether the medications administered to Petitioner

5  may have deprived Petitioner of his faculties at the time of his plea.

6      When the trial court heard the continuance motion on September 9, 2010, Petitioner made

7  an oral *Marsden*[3] motion.  Following a hearing, the superior court denied the *Marsden* motion and

8  scheduled an October hearing on the Petitioner's motion to withdraw his plea.

9      On October 12, 2010, Mr. Lampkin reported that the subpoena had been served on the

10  Lerdo facility and moved for a continuance pending receipt of Petitioner's medical records and

11  determination of the need for a medical expert following counsel's review of those records.

12      On November 2, 2010, the court held an emergent hearing following Mr. Lampkin's

13  motion to be relieved as counsel following a breakdown of communication with Petitioner.  The

14  court relieved Mr. Lampkin and appointed attorney Joe Whittington as Petitioner's trial counsel.

15      On December 6, 2010, Mr. Whittington filed Petitioner's motion to withdraw his plea,

16  stating:

> [Petitioner] will demonstrate that he was under medical supervision
> at the time he entered his plea of no contest and that his free will
> and judgment were impaired by medication.  He will introduce
> medical and psychological records compiled during his
> incarceration.

17

18

19

20      1 CT 116.

21  The motion further stated that prior counsel provided inadequate assistance by failing to advise

22  Petitioner of the direct consequences of his plea.

23      In support of Petitioner's motion to withdraw his no contest plea, Mr. Whittington

24  presented  the testimony of Petitioner and his mother, Diane Laws, a licensed vocational nurse.

25  Although he represented the existence of 60 pages of medical evidence, these were not introduced

26  as evidence.  Mr. Whittington did not call Mr. Lampkin to testify.

27  ///

28

---

[3] *People v. Marsden*, 2 Cal.3d 118 (1970).

1  Ms. Laws testified that Seroquel had been prescribed for Petitioner, who was suicidal.

2  Seroquel made Petitioner tired, groggy, and unable to talk.  In the course of a visit to Petitioner at

3  the jail, Ms. Laws encouraged him to ask to see a psychologist as he remained suicidal.  She also

4  advised Mr. Lampkin of Petitioner's condition, but Mr. Lampkin did not respond to her.

5  Petitioner corrected his mother's testimony, stating that he was taking Remeron, an

6  antidepressant,  not Seroquel, following his suicide attempt.  He was still taking Remeron.

7  Petitioner testified that he was "not in his right mind" (3 RT 145) and did not appreciate that he

8  had the viable defense that he could not be identified as the perpetrator of the robbery since the

9  perpetrator's face was covered, rendering any identification suggestive.

10  On cross-examination, the prosecutor sought to impeach Petitioner's testimony with

11  questions regarding Petitioner's extensive experience in the criminal justice system; his testimony

12  that at the time of the plea, he understood each of his rights, and his ability to present specific

13  requests to the Court for immediate sentencing; a stipulation regarding his prison housing

14  assignment; and a "package deal."

15  The trial court denied Petitioner's motion to withdraw his plea.

16  **b.**     **Content of Medical Records**

17  On October 15, 2013, Petitioner moved to amend the federal petition to include 14 pages

18  of medical and mental health reports dated between April 23, 2010, and May 25, 2011.  Doc. 7.

19  These records were not included in the record before the state court.   Although the physician's

20  orders confirm that Petitioner was prescribed Remeron, Benedryl, and Risperdal, the mental

21  health records contradict Petitioner's testimony at the hearing to withdraw his plea and undermine

22  Petitioner's claims.

23  The first mental health entry, dated June 11, 2010, notes that Petitioner complained of

24  experiencing suicidal intention when he was first returned to jail following his arrest.  Petitioner

25  told the unidentified practitioner[4] that he had experienced depression and vague suicidal feelings

26  since age 14.  The practitioner resumed the medications Petitioner had received during his prior

27

28  _____
[4] The practitioner's signature is illegible, and his or her name and profession are not otherwise noted.

12

incarceration.[5]  On June 12, 2010, Petitioner denied suicidal ideation.  Petitioner complained that he was still depressed on June 25, 2010; the practitioner noted, "probable med seeking."  Doc. 7 at 13.  Petitioner was in court and missed his July appointment.

On August 20, 2010, Petitioner complained of feeling down, missing his family, and crying spells, but denied suicidal ideation. He claimed that he saw "stuff moving," and "someone standing over me," felt "people talking at me," and asserted that he could read minds, before requesting a prescription for Seroquel.  The practitioner noted "clear, coherent answers to questions and seeming to hesitate to determine how to best answer questions re symptoms," and questioned "possible psychotic disorder vs med seeking."  Doc. 7 at 14.

Petitioner continued to complain of depression and trouble sleeping at his September 14, 2010, appointment, but refused the practitioner's recommendation to try a different antidepressant.  The practitioner noted, "suspect med seeking and malingering."  Doc. 7 at 15. Petitioner again refused the recommendation of a different antidepressant on October 12, 2010. The practitioner did not see Petitioner in November  "due to time constraints"  (Doc. 7 at 16) or in December when Petitioner was in court (Doc. 7 at 17).  Petitioner again refused a medication change in January 2011.

In February 2011, Petitioner complained of depression but was noncompliant with his medications.  On March 29, 2011, Petitioner showed no symptoms of psychosis but demanded Seroquel.  He refused to agree to a new antidepressant "if I can't get Seroquel."  Doc. 7 at 19. The practitioner again noted, "suspect malingering."  *Id.*

### c.  Appellate Counsel Appropriately Omitted Investigation Claim

Petitioner does not explicitly address whether appellate counsel's failure or refusal to advance this claim fell below an objective standard of reasonableness.  Because Petitioner's contentions are not supported by the record, the omission does not matter.  Given Mr. Lampkin's initiation of an investigation of Petitioner's mental health at the time of his plea and Mr. Whittington's gathering and presenting the evidence at the motion hearing, the contention that trial counsel failed to investigate Petitioner's mental health is not factually supported.  Although

---

[5] The medical records indicated that the medications had been prescribed by April 23, 2010.

1   Mr. Whittington did not introduce the medical and mental health records into evidence, opting to

2   present the testimony of Petitioner and his mother, Petitioner's submission of the portion of the

3   records obtained in response to Mr. Lampkin's subpoena illustrate why Mr. Whittington 's

4   professional judgment may have led him to omit them from the hearing.

5          Assuming that the 14 pages submitted on appeal are the most persuasive pages among the

6   60 pages that Whittington represented having received, not submitting them as evidence in the

7   motion hearing was likely a strategic decision.  The mental health records undermine, rather than

8   support, Petitioner's claim that his medications rendered him too disoriented to make a reasonable

9   decision.  The practitioner's repeated observations that Petitioner was malingering and feigning

10  illness to obtain psychoactive drugs not only disproved Petitioner's allegations of mental illness

11  and drug-induced loss of judgment, but diminished the credibility of Petitioner's claims as a

12  whole.

13         That Petitioner had historically received these medications is also noteworthy.  At the

14  hearing to set aside the plea, Petitioner attributed his apparent clarity despite his continuing to

15  take the medications to his having gradually become accustomed to the medications.   The

16  records reveal that Petitioner had taken these medications before being incarcerated for the

17  pending offense and had been taking them for a number of months before entering his plea.   To

18  avoid introducing compromising evidence, Mr. Whittington may have made a strategic decision

19  not to present the records.[6]  A strategic decision gives rise to a "virtually unchallengeable"

20  presumption that the lawyer performed reasonably.  *See Strickland*, 466 U.S. at 690.

21         Appellate counsel's determination not to present this issue on appeal does not constitute

22  ineffective assistance either.  If appellate counsel omitted the claim based on the unfavorable

23  content of the medical and treatment records, he may well have concluded that the claim was

24  frivolous and inappropriate to advance on appeal.  In that case, a claim of ineffective assistance

25  cannot prevail because, under *McCoy*, an indigent defendant has no right to appellate presentation

26  to present a frivolous argument, and appellate counsel is "under an ethical obligation to refuse to

27

28
    _____
    [6] The Court does not comment on any ethical considerations relative to the possible intentional omission of evidence
    contradictory to the testimony of Petitioner and his mother.

1    prosecute a frivolous appeal." 486 U.S. at 436.

2           Even if appellate counsel considered the proposed contention to have some substantive

3    value, he was not constitutionally required to present it merely because Petitioner requested that

4    he do so. "Experienced advocates since time beyond memory have emphasized the importance of

5    winnowing out weaker arguments on appeal and focusing on one central issue if possible."

6    *Jones*, 463 U.S. at 751. "The role of the advocate 'requires that he support his client's appeal to

7    the best of his ability . . . . . For judges to second-guess reasonable professional judgments and

8    impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would

9    disserve the very goal of vigorous and effective advocacy that underlies" the provision of

10   appellate counsel to indigent defendants. *Id.* at 754 (quoting *Anders v. California*, 386 U.S. 738,

11   744 (1967). The state court reasonably rejected Petitioner's claim that effective assistance

12   required appellate counsel to advance every claim requested by Petitioner.

13                     **3.      Trial Court's Abuse of Discretion in Denying Withdrawal of Plea**

14          Petitioner next claims that appellate counsel was ineffective in failing to appeal the trial

15   court's abuse of discretion in denying Petitioner's motion to withdraw his plea. The claim

16   restates Petitioner's claim that he was mentally incapable of entering a plea of guilty as a result of

17   his mental illness and medications. It does not address the *Strickland* standards applicable to

18   appellate counsel's determination not to present the claim on appeal.

19                          **a.      Petitioner Cannot Establish Abuse of Discretion**

20          California law provides, "On application of the defendant at any time before judgment . . .

21   the court may . . . for good cause shown, permit the plea of guilty to be withdrawn and a plea of

22   not guilty substituted." Cal. Penal Code § 1018. "A plea cannot be withdrawn simply because

23   the defendant has changed his mind." *People v. Nance*, 1 Cal. App. 4th 1453, 1456 (1991). The

24   defendant must prove by clear and convincing evidence that good cause exists to withdraw the

25   plea. *Id.* In the absence of a clear showing that the trial court abused its discretion, an appellate

26   court must presume that the court applied the standard of clear and convincing evidence. *Id.*

27          "To establish good cause to withdraw a guilty plea, the defendant must show by clear and

28   convincing evidence that he or she was operating under mistake, ignorance, or any other factor

                                            15

overcoming the exercise of his or her free judgment, including inadvertence, fraud, or duress."
*People v. Breslin*, 205 Cal. App. 4th 1409, 1416 (2012).  Petitioner must also establish that he would not have accepted the plea bargain absent the mistake.  *Id.*

The facts alleged in the federal petition would not support a finding that the trial court abused its discretion.  Petitioner's motion was supported only by his own self-serving testimony and that of his mother.

In support of his claim that the trial court abused its discretion, Petitioner also challenges trial counsel's failure to present evidence to establish his entitlement to withdraw his plea.  The effectiveness of trial counsel's representation is not relevant to whether the trial court abused its discretion in denying the motion.

The trial court could reasonably have doubted the credibility of either or both witnesses.
Simply put, Petitioner failed to present clear and convincing evidence to withdraw his plea.

### b.      Appellate Counsel Was Not Ineffective in Failing to Claim Abuse of Discretion on Appeal

Because the facts are not sufficient to establish that the trial court abused its discretion in denying Petitioner's motion to withdraw his plea, it is highly unlikely that advancing the issue of appeal would have led to relief.  Appellate counsel cannot be found ineffective for failing to raise an argument that would not have been successful or making a strategic decision to advance a claim that would detract from the effectiveness of stronger claims.  *Morrison*, 981 F.2d at 429. The state court reasonably rejected this claim.

### 4.      Appellate Counsel Was Not Ineffective in Failing to Assert the Claim that Trial Counsel Provided Inadequate Advice

Petitioner next contends that appellate counsel was ineffective in failing to include as an issue trial counsel's failure to provide Petitioner with information adequate to ensure that Petitioner's plea was voluntary, knowing, and intelligent.  Petitioner presents no basis for this claim other than his own conclusory statements.

///

16

On May 18, 2010, Petitioner completed a written Advisement of Rights, Waiver, and Plea Form for Felonies on which Petitioner indicated that he had not been induced to enter the no contest plea to one count of California Penal Code § 212.5(c) by any promise of representation except that he would receive a three-year prison sentence and that all counts and allegations would be dismissed.  Petitioner initialed the form to indicate that he was entering the plea freely and voluntarily, without fear or threats to himself or anyone close to Petitioner, and that he understood the charge and the possible pleas and defenses.  Petitioner then initialed seven times to acknowledge seven constitutional rights, then initialed seven times his agreement to waive each of those rights.  Finally, before signing his agreement to plea no contest to California Penal Code § 212.5(c), Petitioner initialed his understanding of the applicable consequences of his plea and acknowledged waivers regarding sentencing.

In the course of the plea hearing on May 18, 2010, the Kern County Superior Court reviewed the terms and consequences of the plea.  Petitioner responded affirmatively when the superior court judge asked Petitioner whether he understood each provision of the agreement. Petitioner confirmed his intention to relinquish his constitutional rights, including his right to trial, and stated on the record that his attorney had reviewed Petitioner's rights with him and that Petitioner had no questions.  Petitioner denied that he had entered the no contest pleas because of any threats or promises to him and stated that he was entering the plea freely and voluntarily.  He affirmed that he had sufficient time to speak with counsel about the case.  As the proceeding drew to a close, Petitioner sought to request a recommendation of prison housing (in a fire camp), immediate sentencing, and a bail reduction pending sentencing.

As previously summarized, Petitioner's representations at the plea hearing are presumed true. *Blackledge*, 431 U.S. at 71 (1977).  "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal."  *Id.* at 74.  In the absence of any

1    support for this claim other than Petitioner's conclusory statements, this claim is dismissed as

2    frivolous.

3                    **5.      Counsel's Failure to Invalidate the Plea**
                              **Due to the Effect of Petitioner's Medications**
4

5             Petitioner contends that appellate counsel provided ineffective assistance by failing to

6    seek to set aside the plea agreement on the ground that Petitioner entered it while under the

7    influence of antipsychotic and antidepressant drugs.  In the hearing to withdraw his plea,

8
     Petitioner and his mother testified that Petitioner was unable to think clearly due to the drugs he
9
     was taking when he entered the no contest plea.  Although the federal petition includes
10
     prescription records showing that he was receiving Remeron and Benadryl at the time that he
11
12   entered his plea, these records were not part of the record provided to the state court.  In any

13   event, Petitioner has never presented any evidence, other than the testimony of his mother, a

14   licensed vocational nurse, in support of the proposition that the drugs prescribed to Petitioner, in

15   the amounts prescribed, could have or did sufficiently affect Petitioner to render him incompetent

16   to enter a plea agreement intelligently or knowingly.
17
             The trial court rejected the hearing testimony and denied the motion to withdraw.
18
     Petitioner provided no evidence, in either the state habeas proceedings or in the medical records
19
20   presented to supplement his federal petition, to overcome the presumption that the trial court's

21   factual findings were correct.  *Iaea v. Sunn*, 800 F.2d 861, 864 (9th Cir. 1986).

22           Although Petitioner has not addressed in any way how appellate counsel's performance
23
     fell below an objective standard of reasonableness, his claim of ineffective assistance of appellate
24
     counsel fails because he cannot show prejudice.  Despite the appellate counsel's not including this
25
26   claim within the appeal, Petitioner presented this claim in collateral proceedings, and the state

27   court rejected it.  Even though Petitioner would interpret the evidence presented favorably, the

28   state court's rejection of Petitioner's argument was not unreasonable.

1

2

**6.      Appellate Counsel Was Not Ineffective in Deciding Not to Claim
Ineffective Assistance of Trial Counsel Based Absence of Identification**

3          In his second ground for habeas relief, Petitioner contends that Mr. Lampkin rendered

4    ineffective assistance when he failed to advise Petitioner that Petitioner was never identified as

5    the robber.  Petitioner states that on cross-examination (the transcript of which has been omitted

6    from the record), Shafter Police Detective Chris Grider testified that no investigation procedures

7    were ever conducted.  Petitioner contends that he would not have elected to plead no contest if he

8    had known that no line-ups, show-ups, or any other method or procedure had been used to

9    identify Petitioner as the perpetrator.  In the absence of identification, argues Petitioner, "this

10   issue points unerringly to Petitioner's innocence."  Doc. 42 at 51.

11

12                        **a.      Factual and Procedural Background**

13         Petitioner's claim that he was never identified as the robber misrepresents the evidence

14   presented at the preliminary hearing.  At the hearing, Shafter Police Officer Wilke Marilao

15   testified that he responded to a call concerning an armed robbery of the Chevron Gas Station.

16   Clerk Dimera Sanchez told Officer Marilao that an apparently African-American male[7]

17   brandishing a knife had confronted her and taken money from the cash register and an off-duty

18   employee's cell phone.  The suspect was at least five feet, eight inches tall, medium build, in his

19   20's or older, wearing a light colored or white hooded sweatshirt and a blue bandana over his

20   lower face.

21

22         Detective Grider investigated the robbery.  Grider testified that he contacted the store

23   owner and viewed the surveillance tapes from a 16-camera security system.  Grider testified that

24   in video recorded at approximately 7:20 p.m. on February 5, 2010,  he observed the robber

25   confronting the clerk while a blond female co-defendant (later identified as co-defendant Robin

26

27

28
_____

[7] Because the robber's face was covered by his hood and a bandana, Ms. Sanchez only saw the robber's skin on his forehead.

Malcolm) acted as a look-out outside the store.  The robber and the look-out left the station in a dark blue sedan.  Detective Grider produced still photographs of the suspects from the videotape, including one of the co-defendant before she pulled her hood over her head.

Detective Grider also reviewed security videos from the same store at about 7:40 p.m. on February 14, 2010, and produced still photographs.  The February 14, 2010, tape revealed two individuals arriving at the same Chevron gas station in a blue Dodge Intrepid sedan.  The individuals did not conceal their faces.  After selecting several items they proceeded to the check-out.  While the clerk was distracted, each took a container of Nitro-Go Energy and concealed it in their clothing.  Detective Grider identified the two individuals in the videotape as Petitioner and Malcolm, who were seated in the court room.

In the course of his investigation, Detective Grider interviewed Josue Contreras, an employee of the Chevron station.  While outside the store at about 7:30 p.m. on February 14, 2010,  Mr. Contreras saw Petitioner and Malcom arrive in the blue Intrepid and enter the store.  Based on what he had heard about the robbery on February 5, 2010, Contreras thought that Petitioner and Malcolm might be the individuals who had robbed the store.  When they came out of the store, Contreras engaged them in small talk and noted the license number of their car.

Detective Grider used the license number to identify a 2000 Dodge Intrepid registered to Petitioner and Malcolm.  Detective Grider then obtained driver's license photos of Petitioner and Malcolm, and mug shot photographs from their prior bookings in other Southern California jurisdictions.  He compared the driver's license photos and mug shots to the still photographs obtained from the surveillance system and identified Malcolm in the photos from both dates.  Detective Grider could not positively identify Petitioner from the photograph of the male suspect in the robbery since that suspect was disguised at all times, but was able to identify the man accompanying Malcolm on February 5, 2010, to be Petitioner.  He noted that the man was

wearing the same clothing on both dates.

Believing that the same individuals had likely committed other robberies in the area, Detective Grider also contacted nearby jurisdictions to see if they had similar robberies with the same suspects.  Bakersfield Police Detective Madden advised Detective Grider that he was familiar with Petitioner, who was a suspect in a robbery in Bakersfield.  The detectives determined that Petitioner was the suspected robber in both cases.

Detective Grider and uniformed Shafter patrol officers went to Bakersfield to participate in probation searches of a motel room rented to Petitioner and Malcolm and the address at which their car was registered.  As they travelled through Bakersfield from the motel room to the second location, officers spotted the Intrepid,[8] conducted a traffic stop, and arrested Petitioner and Malcolm.  Police recovered butcher knives from the car and Malcolm's purse, as well as clothing similar to that worn in the security videos, including the patterned sweater that Malcolm had worn.  When Petitioner was arrested, he was wearing distinctive black-and-white shoes that were the same as those worn by the robber on February 5, 2010.

After advising Petitioner of his Miranda rights, Detective Grider interviewed Petitioner on two occasions.[9]  Petitioner admitted that he was at the Chevron station with Malcolm at about 7:30 p.m. on February 5, 2010.  Petitioner told Grider that while there, Petitioner and Malcolm encountered a friend named "Jailbird."  Petitioner suggested that Jailbird might have robbed the Chevron station.

### b.    No Ineffective Assistance of Appellate Counsel

Petitioner bases this claim on the proposition that he was uninformed that he had a valid defense based on lack of identification because the Shafter Police Department did not conduct a physical or photo line-up, a show-up, or any other procedure to identify Petitioner as the robber.

---

[8] At the time of the traffic stop, the license plate on the Intrepid was covered by a paper dealer's license plate .
[9] Malcolm did not speak to police.

Although the prosecution must prove a defendant's guilt beyond a reasonable doubt, police are not required to conduct any of the identification procedures that Petitioner claims were omitted. Detective Grider's testimony skillfully set forth the process by which police identified Petitioner and Malcolm as the perpetrators of the Chevron Station robbery and set forth the evidentiary basis for the charges against Petitioner.

Petitioner, who was not a stranger to criminal proceedings, was present for the Officer Marilao's and Detective Grider's testimony at the preliminary hearing and knew that he had not participated in a line-up, show-up, or similar identification procedure. He had already attempted to establish a basis for mistaken identity by attributing the robbery to Jailbird. Petitioner's claim that he did not discover identification as a possible defense until well after he entered his no contest plea lacks credibility. In short, Petitioner failed to establish that he would not have entered a plea but for his misconception of law. *See Breslin*, 205 Cal. App. 4th at 1416; *Nance*, 1 Cal. App. 4th at 1456.

As with his other claims, Petitioner does not address the application of the *Strickland* test. Given the weakness of this claim, however, the state court did not act unreasonably in denying Petitioner habeas relief for ineffective assistance of appellate counsel based on his misconception of law.

## IV.   Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

(b)  There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

(c)    (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A)  the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B)  the final order in a proceeding under section 2255.

(2)  A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3)  The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Accordingly, the Court declines to issue a certificate of appealability.

///

///

///

1

**V.      Conclusion and Order**

2

       The Court hereby DENIES the Petition for writ of habeas corpus, ORDERS the entry of

3

judgment for Respondent and DECLINES to issue a certificate of appealability.

4

5

IT IS SO ORDERED.

6

7

Dated:   **September 28, 2016**                          /s/ *Sheila K. Oberto*

8

                                         UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28